IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 16-cv-03091-RPM

AUTO-OWNERS INSURANCE COMPANY,

    Plaintiff,
v.

DAVID UNRUH and
KENDALL UNRUH,

    Defendants.

_____

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
_____

    Defendants David and Kendall Unruh were seriously injured in a motor vehicle accident in Colorado Springs, Colorado on August 10, 2014. Just before the accident the Unruhs had been on a Sunday drive to the mountains and were headed home after having breakfast together. Their vehicle, a 1965 Chevrolet Corvette driven by David Unruh, was struck head-on by a 2008 Mercedes operated by Megan Allison, a minor, and owned by Jesus Shark. David Unruh held legal title to the Corvette and the vehicle was being used by the Unruhs solely for their personal use. Kendall Unruh was a front-seat passenger in the Corvette. According to the Unruhs, Ms. Allison was immediately recognized as the at-fault driver, and was cited for careless driving because she was texting while driving and crossed the center line before crashing head-on into the Unruhs. The Unruhs' injuries were catastrophic and their combined medical bills exceeded $1,245,000.

    Ms. Allison was insured under an automobile liability insurance policy issued by United Services Automobile Association (USAA) to Mr. Shark, which had coverage limits of $100,000

per person and $300,000 per accident. The Unruhs presented claims to USAA for the injuries caused by Ms. Allison's negligence and later settled their claims for the available liability insurance limits of $200,000. The Unruhs did not request or obtain Auto-Owners' consent before settling their claims with USAA.

At the time of the accident, the Corvette was insured by State Farm Mutual Automobile Insurance Company under an automobile insurance policy issued to David Unruh with uninsured/underinsured motorist (UM/UIM) limits of $100,000 per person and $300,000 per accident. The Unruhs were also covered under an umbrella insurance policy issued to them by State Farm Fire & Casualty Company, with UM/UIM coverage limits of $1,000,000. The Unruhs presented claims for UIM benefits under the State Farm automobile and umbrella policies, and recovered the full available limits of UIM coverage in the amount of $1,200,000.

The Unruhs, who are husband and wife and reside in the same household, are the co-owners, stockholders, and officers of The Car Show, Inc. (The Car Show), which operates a used car dealership in Colorado Springs. Plaintiff Auto-Owners Insurance Company (Auto-Owners) issued a "garage liability" policy, with other related coverage, Policy No. 44-605-881-01 (the Policy), to The Car Show, with effective dates of July 1, 2014 through July 1, 2015. The Policy includes uninsured/underinsured motorist (UM/UIM) coverage with limits of $1,000,000.

On approximately August 3, 2016, nearly two years after the accident, the Unruhs' attorney first notified Auto-Owners of the accident and their injuries and demanded payment of the Policy's UIM coverage limits. Auto-Owners seeks summary judgment on its claim for declaratory relief, asserting that the Unruhs are not entitled to UIM benefits. The principal issue on summary judgment is one of policy interpretation focusing on whether the Unruhs are

"insureds" under the Policy issued to The Car Show. Alternatively, Auto-Owners argues that the Unruhs' coverage claims are barred because they settled their liability claims against Ms. Allison without obtaining Auto-Owners' consent, allegedly resulting in prejudice to Auto-Owners.

The Declarations Pages in this 217-page Policy, including those concerning the UIM endorsement, uniformly identify only The Car Show, Inc. as the "Insured," and do not directly name the Unruhs as additional "Insureds." *See* Policy (Doc. 20-2) at Bates Nos. 000212-217, 000318-324.

However, the Policy also contains an endorsement titled "Drive Other Cars – Broad Form" (also referred to as "DOC – Broad" coverage). The Declarations page for that endorsement states "DOC – Broad: DAVID R. UNRUH." *Id.* at 000320. The DOC – Broad Form coverage page provides an additional definition "as it applies to this endorsement only":

> **Named individual** means:
> a. The person shown in the Declarations under DOC-Broad;
> b. The spouse of such person if a resident of the same household; and
> c. Anyone who resides with such person and who is related to such person by blood, marriage or adoption. This also includes a ward or foster child who resides with such person.

*Id.* at 000424 § 1. The DOC – Broad coverage then provides that "Coverages provided by this policy and shown in the Declarations under DOC – Broad for the **named individual** are extended to such **named individual** <u>as if they were the first named **insured**</u>." *Id.* § 2.a (underlining added).

These provisions of the DOC – Broad endorsement unambiguously extend coverage to both David Unruh and Kendall Unruh "as if they were the first named **insured**" because David is named in the DOC – Broad Declarations and Kendall is his spouse and a resident of the same household. Thus, unless coverage is otherwise excluded, each of the Unruhs is a "**you**" as

3

defined by the Policy: "**You** or **your** means the **insured** shown in the Declarations and if an individual, **your** spouse who resides in the same household." *Id.* at 000374 ¶ LL. As such, they are included as Insureds for purposes of liability coverage the same "as if they were the first named **insured**."

But the DOC – Broad provisions also contain this exclusion from coverage: "This insurance does not apply . . . To the **named individual** while operating any **auto** owned by the **named individual**." *Id.* § 2.b.(3).[1] Just as unambiguously as the DOC – Broad endorsement extends coverage to the Unruhs, this exclusion takes it away from David Unruh, only, because there is no dispute that he was operating and owned the Corvette when the accident happened.

This exclusion does not apply to Kendall. Auto-Owners argues that the DOC – Broad definition of "named individual" is a singular term, meaning that David and Kendall are, jointly, a single named individual. In other words, Auto-Owners argues that if either of them is the owner or operator of the subject auto in an accident in which both are involved, then the exclusion applies to both of them because they are considered to be a single person. In effect, Auto-Owners argues that Kendall must be considered to be the owner and operator of the vehicle in conjunction with her husband for purposes of coverage, even though in reality she was neither. Auto-Owners acknowledges that it knows of no case law interpreting this language in this manner.

Auto-Owners' interpretation of the language of § 2.b.(3) is unreasonable. Words in an insurance policy are to be given their plain and ordinary meaning unless a contrary intent is expressed in the contract. *Chacon v. American Fam. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990).

---

[1] There is no doubt that § 2.b.(3) is an exclusion for purposes of policy interpretation. Its own terms describe it as such: "This exclusion does not apply to a private chauffeur or domestic servant of the **named individual**."

The plain meaning of "named individual" is a single person. *See, e.g., Dictionary.com Unabridged* (November 1, 2017) (defining individual as "a single human being, as distinguished from a group"). Nothing in the exclusion or its underlying definition suggests that it is intended to include more than one person, considered jointly, in circumstances such as those presented here. Given this plain language, each named individual must be considered separately in determining whether the exclusion applies. The potential absurdity of Auto-Owners' interpretation is underscored by the additional inclusion of other relatives and even wards and foster children in the definition of "named individual," all of whom would be excluded on Auto-Owners' theory that they would be considered to be a single named individual operating an auto owned by any one of them. Policy at 000424 § 1.c. The Policy simply does not express that intent.2

Even if Auto-Owners' interpretation of the exclusionary language were reasonable, at most that would create an ambiguity. *See Cary v. United of Omaha Life Ins. Co.,* 108 P.3d 288, 290 (Colo. 2005) ("An insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation."). Any ambiguity in an insurance policy is construed in favor of providing coverage to the insured. *Id.* Specifically regarding exclusions, "[t]o benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any

---

2 Auto-Owners subtly rewrites this exclusionary language in its reply brief, arguing. "There is no coverage for Kendall because the Accident occurred while <u>a</u> **named individual** (David) was operating an **auto** owned by <u>that</u> **named individual** (David)." Doc. 22 at 7 (underlining added). That wording better supports Auto-Owners' interpretation than the actual Policy language, which provides that coverage does not apply to "<u>the</u> **named individual** while operating any **auto** owned by <u>the</u> **named individual**." That distinction plainly indicates an intent to exclude only the single named individual who owns and is operating the auto, and reflects no intent to exclude every other named individual who may be in the auto at the time. Policy at 000424 § 2.b.(3) (underling added).

other reasonable interpretations." *Am. Family Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991) (citing *Hecla Mining Co. v. New Hampshire Ins. Co.,* 811 P.2d 1083, 1090 (Colo.1991)).

Auto-Owners has not met that burden, and therefore cannot avoid coverage for Kendall based on this exclusion.

The Unruhs argue incorrectly that the Policy is unenforceable under Colorado law because it ties UIM coverage to occupancy of a particular vehicle, rather than covering the insured person. *See, e.g., DeHerrera v. Sentry Ins. Co.,* 30 P.3d 167, 176 (Colo. 2001). Auto-Owners agrees that if either of the Unruhs is covered under the liability portion of The Car Show's Policy, then UIM coverage exists as well. Kendall Unruh is included under that liability coverage by virtue of being a "**you**" under the Policy. Policy at 000365-66 § B.1.

Auto-Owners argues alternatively that it is entitled to summary judgment because the Unruhs settled with the at-fault driver without providing Auto-Owners notice of a potential claim or obtaining permission to settle. An insurer bears the burden of demonstrating by a preponderance of the evidence that it has been prejudiced by the insured's failure to provide notice or obtain consent. *See Clementi v. Nationwide Mut. Fire Ins. Co.,* 16 P.3d 223, 230 (Colo. 2001). Auto-Owners has provided only conclusory argument that the Unruhs' delay prejudiced the Auto-Owners' ability to investigate the accident, including the availability of any other applicable insurance or potential subrogation rights. Summary judgment is inappropriate given the factual nature of this claim and Auto-Owners' failure to provide evidence demonstrating prejudice.

Based on the foregoing, it is

ORDERED that Auto-Owners' Motion for Summary Judgment against David Unruh is GRANTED; and it is

FURTHER ORDERED Auto-Owners' Motion for Summary Judgment against Kendall Unruh is DENIED.

DATED: November 6, 2017

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior District Judge